(C. D. 134)

C. R. BARD, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 21, 1939)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney) for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: The question involved in the suits listed in schedule A, hereto attached and made a part hereof, is purely one of fact, to wit: the component material of chief value in certain catheters and other articles imported from France.

Duty was levied thereon either at the rate of 40 per centum ad valorem under paragraph 923 of the Tariff Act of 1930 as manufactures of cotton, not specially provided for, or at the rate of 65 per centum ad valorem under paragraph 1211 of said act as manufactures of silk, not specially provided for. Plaintiff contends that such of the merchandise as contains metal parts is properly dutiable at but 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal, not plated with platinum, gold, or silver, or colored with gold lacquer, not specially provided for; and that the remaining articles are in chief value of gum and therefore are properly dutiable at only 20 per centum ad valorem under paragraph 1558 of said act as unenumerated manufactured articles.

In support of their contentions plaintiff introduced testimony of the foreign manufacturer of the instant merchandise, which was taken under a commission issued out of this court. The said commission was duly executed and returned and was admitted in evidence, together with certain exhibits attached thereto, as Collective Exhibit 1.

It appears from the testimony of said manufacturer that the articles in question are composed of a cotton core or a silk core which is woven on a specially constructed loom; and that after weaving it is dipped in gum which is spread thereon by rubbing between the hands. The dipping and rubbing processes are repeated a number of times, the exact number being regulated by the thickness of the gum applied. At different intervals during the gumming processes, the core is subjected to pumicing, the number of pumicings applied being dependent on the roughness of the core and what is necessary to produce a smooth surface. The witness testified that as many as sixty coats of gum and four pumicings are applied before the finished article is produced.

Plaintiff's witness further testified that the gum used in producing the articles in question consists basically of linseed oil, which undergoes a cooking and boiling process during which guttapercha, copal, ceruse, and litharge are added. His testimony on this point is as follows:

* * * the basic product is linseed oil, and the gum is obtained by boiling or cooking the linseed oil. This brings about oxydation, which makes the oil more siccative and gives it more body. During cooking it undergoes a chemical change, a part of the oil evaporates, and the gum appears to be a darker brown. There is a certain reduction when the gum is sufficiently cooked, but it is still fluid.

A similar question to that raised herein was passed upon in our decision in the case of *C. R. Bard, Inc., et al.* v. *United States* (T. D. 49189). There, as here, the only evidence offered consisted of the testimony of the foreign manufacturer, which was taken by means of depositions, or interrogatories. In that case no objections were

raised by defendant to the evidence offered by plaintiffs, and the court sustained their claims, on the basis of the record before it.

In the instant case, however, the defendant disputes the accuracy of certain figures offered by plaintiff's witness showing the cost of the various materials entering into the articles in question. Counsel for the defendant objects to the answer to Direct Interrogatory 19, so far as it relates to the gum used in producing the articles in question, on the ground it does not reflect the true cost of the manufacture of said gum. The answer to said interrogatory, so far as pertinent, reads as follows:

The gum ready for use costs us eighteen francs per kilo, or, for a No. 20 catheter, forty-two (42) centimes, allowing for the loss of 75% of the gum in the course of manufacture. This cost price is arrived at as follows:

Raw linseed oil, 30 kilos at frs. 9. per kilo _____ Frs. 270.—

Reduction to 20 kilos after thermic treatment, which—

|  |  |
|---|---|
| 20 kilos therefore still cost _____ | Frs. 270.— |
| Labor _____ | 40.— |
| Litharge or ceruse, guttapercha and copal _____ | 12.— |
| Fuel _____ | 10.— |
| Proportionate share of general expenses, 70.6% of the labor cost of frs. 40 _____ | 28.24 |
| Total _____ | 360.24 |

for twenty kilos, or eighteen francs per kilo.

It is contended by defendant that the actual quantity of linseed oil used by the manufacturer, to wit, 30 kilos, should have been employed in computing the cost of the gum, rather than the quantity which remains after the cooking or boiling process; and, further, that no proper foundation has been laid to apply the lesser quantity, to wit, 20 kilos, which was used by plaintiff's witness in his calculations.

Although the witness did not state in terms of percentage the amount of linseed oil that is lost in the cooking and boiling process to which it is subjected, he did say "it undergoes a chemical change," and "a part of the oil evaporates." Since said witness, in our judgment, is thoroughly qualified to testify concerning the manufacture of the instant merchandise, we regard as competent his testimony to the effect that the quantity of linseed oil used in producing the gum is reduced by 33⅓ per centum after said thermic treatment.

Furthermore, the procedure followed by the manufacturer in determining the cost of the gum, as revealed in the above statement, is in accordance with the rule for determining the component material of chief value in imported merchandise as laid down by the United States Court of Customs and Patent Appeals in its decision in the matter of *United States* v. *Bacharach*, 18 C. C. P. A. 353, T. D. 44612. In that case the court said:

\* \* \* The rule has long been settled that the proper method of determining component material of chief value is by determining the value of the separate parts of the article at the time when they are ready to be combined to make the completed article. "Value," when used in this connection, does not relate to the dutiable value of the component materials, but to the cost of such components to the manufacturer of the completed article.

At the time the gum was ready to be used and combined to make the completed article, the quantity available, as shown in the above statement, was twenty kilos; and the value for such quantity, as hereinabove set forth, represents the actual cost thereof to the manufacturer. We therefore hold that the manufacturing cost of the gum as given in the statement hereinabove quoted from the answer to said Direct Interrogatory 19, represents the true value thereof for the purposes of this case.

In his brief counsel for the defendant further contends that there is a "great disparity" between the witness' answer to Cross-Interrogatory 5 and his answer to Direct Interrogatory 19, so far as the latter relates to charges for overhead made in computing the cost of the cotton and silk cores of the article in question. Cross-Interrogatory 5 and the answer thereto read as follows:

5. What is the overhead charge per kilo in the production of this tubing? For cotton and for silk?

A. The proportionate share of general expenses is the same for cotton and for silk, to wit, seven francs fifty centimes (frs. 7.50) per kilo.

The cost of producing a cotton core and a silk core is set forth in the witness' answer to said Direct Interrogatory 19 as follows:

| | Centimes |
|---|---|
| \* \* \* For a No. 20 catheter the cotton fabric weighs two grams, and costs | 11. 2 |
| to which must be added the cost price of weaving and labor | 10. 7 |
| And the proportionate share of general expenses | 7. 5 |
| so that the cost of the cotton for one catheter core works out at | 29. 4 |
| In the case of silk cores, the silk costs us one hundred francs per kilo, which, for two grams, makes | 20. 0 |
| plus weaving and labor | 10. 7 |
| to which must be added a proportionate part of general expenses, to wit | 7. 5 |
| so that the total cost of the silk for one silk catheter core works out at | 38. 2 |

Said counsel points out that the witness states the overhead charges for the production of said cores, per kilo, are the same as the amount set forth in the above statements covering the manufacturing cost of one cotton core and one silk core. It will be observed, however, that in his statement showing the cost of producing the gum the witness states that the overhead charge is 70.6 per centum of the labor cost.

Computing in terms of percentage the charges for overhead in producing the cotton and silk cores, we get approximately the same result. Hence, it is a fair conclusion to assume that the witness' answer to Cross-Interrogatory 5 is error; and that said answer actually represents the overhead charge for one cotton core and one silk core.

On the uncontradicted testimony of plaintiff's witness we find as a matter of fact:

1. That the merchandise represented by the invoice item numbers enumerated in schedule B, attached hereto and made a part hereof, or, where there are no item numbers, under the invoice descriptions listed in said schedule B, whether in the singular or plural and whether or not abbreviated in any manner, consists of manufactured articles in chief value of metal, not plated with platinum, gold, or silver, nor colored with gold lacquer.

2. That the merchandise represented by the invoice item numbers enumerated in schedule C, attached hereto and made a part hereof, or where there are no item numbers, under the invoice descriptions listed in said schedule C, whether in the singular or plural and whether or not abbreviated in any manner, consists of manufactured articles in chief value of gum.

On the established facts, we hold as matter of law:

1. That the merchandise represented by the invoice item numbers enumerated in said schedule B, or under the invoice descriptions listed in said schedule B, whether in the singular or plural and whether or not abbreviated in any manner, is properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as alleged by plaintiff.

2. That the merchandise represented by the invoice item numbers enumerated in said schedule C, or under the invoice descriptions listed in said schedule C, whether in the singular or plural and whether or not abbreviated in any manner, is properly dutiable at the rate of 20 per centum ad valorem under paragraph 1558 of said act, as alleged by plaintiff. *C. R. Bard, Inc., et al.* v. *United States*, T. D. 49189, followed.

To the extent indicated, the protests are sustained. Since counsel for plaintiff, in their brief, have abandoned all claims as to the items described on the invoices as "43 Bougies olivaires grains de plomb," and as to invoice item 10, the protests are dismissed so far as they relate to such merchandise. In all other respects and as to all other merchandise not hereinabove referred to the protests are overruled.

Judgment will be rendered accordingly.